## BAILEY v. SMITH.

Court of Appeals of District of Columbia.

Submitted December 9, 1927. Decided January 3, 1928.

No. 4595.

**1. Sales ⬤⟿41—In absence of fraud or confidential relationship, there is basis for application of rule of caveat emptor.**

Where buyer has equal and available means and opportunity for information, and there are no confidential relations existing, and no fraud or artifice is used to prevent inquiry or investigation, there is basis for application of rule of caveat emptor.

**2. Sales ⬤⟿41—Rule of caveat emptor is inapplicable, where seller makes statements concerning matters peculiarly within his knowledge to induce sale.**

Where seller makes statements of fact concerning matters peculiarly within his knowledge for purpose of inducing action by buyer, rule of caveat emptor has no application.

**3. Partnership ⬤⟿227—Buyer of interest in business was justified in relying on statements of seller's partner, who kept books, as to whether accounts were good.**

Buyer of interest in business, knowing that seller's partner kept books of firm and was in position to know whether accounts were good or bad, was justified in relying on his statement concerning them.

**4. Partnership ⬤⟿227—Defendant, alleging that note for partner's interest sued on was induced by fraudulent representations, must prove such representations, effect thereof, and prompt repudiation on discovery of deceit.**

In action on note representing part of purchase price of interest in business, in which defendant alleged sale was induced through false representations by seller, defendant had burden to prove false representations, that he believed them, and was induced by them to sign contract and notes, and that he promptly repudiated contract on discovery of deceit.

**5. Evidence ⬤⟿271(19)—Seller's letter to buyer, denying that he made false representations inducing execution of note sued on, held inadmissible in action by deceased seller's personal representative.**

Where defendant buyer alleged that execution of note sued on was induced by false representations of seller, a letter from seller to defendant, denying that he had made such representations, held properly excluded, as being self-serving, in action by deceased seller's personal representative, where its sole purpose was to prove facts recited.

**6. Appeal and error ⬤⟿203(½)—Question as to identity of witness Thornton R. Burns, who was subpoenaed as Thornton W. Burns, cannot be raised for first time on appeal.**

Where testimony of Thornton R. Burns, who was subpoenaed as Thornton W. Burns, was received without objection, question as to identity of witness cannot be raised for the first time in appellate court.

23 F.(2d)—62

**7. Names ⬤⟿3—Where Thornton R. Burns testified it cannot be urged that Thornton W. Burns, named in subpoena, did not testify.**

Where Thornton R. Burns appeared and testified after being subpoenaed as Thornton W. Burns, it cannot be contended that Thornton W. Burns did not testify, but that another witness was produced.

Appeal from Supreme Court of the District of Columbia.

Action by Lorenzo A. Bailey, collector of the personal estate of Robert F. Rose, deceased, against Howard B. Smith. From a judgment for defendant, plaintiff appeals. Affirmed.

L. A. Bailey and M. L. Hill, both of Washington, D. C., for appellant.

W. G. Johnson, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and GRAHAM, Presiding Judge U. S. Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a judgment for the defendant, appellee here, in the Supreme Court of the District of Columbia, upon the verdict of a jury, in an action of assumpsit upon three overdue promissory notes, of $500 each, made by the defendant and payable to plaintiff's and appellant's intestate, Robert F. Rose. The defense was that the notes had been given to Rose, together with a cash payment of $1,500, as the purchase price for the one-half interest of Rose in a partnership business known as the National Shorthand Reporting Company, and that defendant was induced to purchase through false representations made by Rose.

The evidence for the defendant, received without objection, was substantially as follows: About the last of August, 1924, Rose called upon Smith and offered to sell Smith his interest in the business, showing Smith a list of accounts receivable prepared by Rose's partner, Hull, a short time before from the books of the firm, kept by Rose. Rose represented that all the accounts on this list were good and collectible, but some were a little slow. Upon another occasion, when Rose, Hull, and Smith were together, Rose directed Hull's attention to the list of accounts, and inquired of Hull whether he did not consider the same good, and Hull replied in the affirmative. Early in September Smith went to St. Paul, Minn., where he remained until about the middle of the month. During his absence Rose called at the office of Smith and left word with Mrs. Smith, who was acting as clerk for her husband, to let him (Rose) know when Smith returned as he

(Rose) was in a hurry to close the contract, for the reason that he was going to leave the city. Upon the return of Smith from St. Paul, Rose again called at his office, and, Smith being out, told Mrs. Smith to request Smith, as soon as he came in, to go at once to the office of Rose. Rose also told Mrs. Smith that he had an offer from a Mr. Thornton W. Burns, another shorthand reporter engaged in the same business, to purchase the interest of Rose in the National Shorthand Reporting Company; that Burns was willing to pay $4,000 for this interest, but that Rose, as he had offered it to Smith for $3,-000, would let Smith have it at that price. Mrs. Smith delivered the message to her husband, who immediately went to the office of Rose. Considering Burns to be a good judge of the value of the business, and relying upon Rose's statements as to the accounts and Burns' offer, Smith, on September 16, 1924, signed a contract under which he paid $1,-500 cash and executed the notes here involved, aggregating another $1,500.

Almost immediately thereafter Rose went to California, where he died three months later. Two or three weeks elasped after the execution of the contract before Smith took possession under it, and when, still later, Smith and Hull started to collect the accounts, 9 persons on the list, against whom there were charges aggregating $563.05 denied that they ever had been indebted to the firm, while 7 others, charged on the list in the aggregate of $363.30, had paid the amounts charged against them before the contract with Smith was executed. These 16 persons testified at the trial, and there was no evidence challenging their statements.

A witness, summoned under the name of Thornton W. Burns, was called to the stand by the defendant, and, after being sworn, testified that his name was Thornton R. Burns. He further testified, without objection, that, prior to the execution of the contract between Rose and Smith, Rose sent for the witness and offered to sell him Rose's interest in the business, but witness told Rose he did not care to purchase it; that he made no offer to Rose of $4,000 or any other sum, and that he never was willing to pay that or any other sum for the business.

On November 6, 1924, Smith mailed a letter to Rose, which on notice was produced by the plaintiff, and in which Smith notified Rose that, owing to misrepresentations by Rose, he (Smith) refused payment of the notes, demanded the return of the cash payment of $1,500, repudiated the contract, and tendered to Rose the interest in the business.

This letter was received without objection, but the court instructed the jury that it was not to be considered as evidence of the facts therein stated, but solely for the purpose of proving notice to Rose that Smith repudiated the contract.

Aside from the notes, the only evidence offered by the plaintiff was a letter, dated November 12, 1924, from Rose to Smith. In that letter Rose denied that he had made any representations to Mrs. Smith as to Burns' offer, and also denied any misrepresentations as to the accounts. The letter was offered generally, and excluded, plaintiff excepting.

At the request of the plaintiff, the court instructed the jury that the burden was on the defendant to prove that Rose, before the execution of the contract, represented to the defendant as a fact that the accounts receivable referred to in the contract were due, good, and collectible, or that Thornton W. Burns had offered to pay Rose $4,000 for the half interest of Rose in the business; that the defendant then believed it was true, and relied upon it, and was induced thereby to sign the contract and notes; that defendant did not discover the deceit until more than a month thereafter; that upon such discovery defendant promptly repudiated the contract, as stated in his letter to Rose; and that, unless the jury should find that the defendant had sustained this burden, their verdict should be for the plaintiff.

Plaintiff then requested the court to instruct the jury that, if they believed, upon all the evidence, "that the defendant, before signing the contract, had an opportunity to learn whether Burns had in fact offered Rose $4,000 for his interest in the business, and whether some or any of the accounts in question were not good and collectible," their verdict should be for the plaintiff. This request was refused, and exception noted.

The plaintiff also excepted to the granting of prayers offered by the defendant that did not differ substantially from the first prayer granted at the request of the plaintiff. The position of the plaintiff here is that Rose and Smith dealt at arm's length; that "in signing the contract and notes Smith waived investigation of the matters involved in the alleged fraud, and waived the right to complain of the result of his own indiscretion." [1, 2] We agree with the plaintiff that where "the purchaser has equal and available means and opportunity for information, and there are no confidential relations existing between the two, and no fraud or artifice is used to prevent inquiry or investigation," there is a

basis for the application of the rule of caveat emptor. But, where, as here, the vendor makes statements of fact concerning matters peculiarly within his knowledge for the purpose of inducing action by the vendee, the rule has no application., F. H. Smith Co. v. Low, 57 App. D. C. ——, 18 F.(2d) 817. He whose false representations have induced another to deal with him is not standing upon very firm ground when he takes the position that his victim ought not to have relied upon his false statements. As observed by the court in Strand v. Griffith (C. C. A.) 97 F. 854, 856: "There is no rule of law which requires men in their business transactions to act upon the presumption that all men are knaves and liars, and which declares them guilty of negligence, and refuses them redress, whenever they fail to act on that presumption. The fraudulent vendor cannot escape liability by asking the law to applaud his fraud and condemn his victim for his credulity."

[3] Knowing that Rose had kept the books of the firm, and therefore was in position to know whether the accounts were good or bad, Smith was justified in relying upon the positive statement of Rose concerning them. Moreover, the statement as to the offer of Burns was made to induce prompt action.

[4] The instruction granted at the request of the plaintiff was a correct statement of the law, and there was no evidence upon which to base the refused instruction.

[5] The Rose letter was properly excluded, because of its self-serving character. The statements of fact therein could not be proved through the introduction of this letter, which had no tendency to disprove the notice of repudiation. In other words, its sole purpose was to prove the facts it recited.

[6, 7] As already noted, the testimony of Thornton R. Burns, who was subpoenaed as Thornton W. Burns, was received without objection, and the record fails to disclose that any question was raised in the trial court as to the identity of this witness. It now is urged "that Thornton W. Burns did not testify at the trial, but the defendant produced as a witness another person, Thornton R. Burns, who knew nothing about the dealings between Rose and Thornton W. Burns." There are two answers to this contention: First, that such a contention may not be raised for the first time in an appellate court; and, second, that the contention has no merit. Games v. Stiles, 14 Pet. 322, 10 L. Ed. 476; Monroe Cattle Co. v. Becker, 147 U. S. 47, 13 S. Ct. 217, 37 L. Ed. 72.

The judgment is affirmed, with costs.

Affirmed.