### BORZILLO et al. v. THOMPSON et al.
### No. 578.

Municipal Court of Appeals for the

District of Columbia.

Feb. 6, 1948.

Francis J. Kelly, of Washington, D. C. (J. Louis O'Connor, of Washington, D. C., on the brief), for appellants.

H. Max Ammerman, of Washington, D. C. (Louis Ottenberg, of Washington, D. C., on the brief), for appellee Earll.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This action was brought by the contract purchaser of a three-story apartment building to recover his deposit after rescinding the contract. The defendants named were the real estate broker, who had negotiated the contract, and the four sellers, who jointly owned the building. Thereafter the broker filed a cross-action against his codefendants for his claimed commission for negotiating the contract. Judgment was given in favor of the plaintiff and against the broker for the return of the deposit and in favor of the broker on his cross-claim against the other four defendants for the commission. No appeal was taken from the judgment in favor of plaintiff, and this appeal deals solely with the question whether the broker was entitled to his commission.

While there were conflicts in the evidence as to the circumstances surrounding the transaction, these conflicts were resolved by findings of fact made by the trial judge sitting without a jury. The facts thus determined show that on July 31, 1945, the broker, having heard that the property was for sale, called upon the defendant Bishop, who represented himself and the other defendants, and received a written listing authorizing him to sell the property. In addition to giving the terms of sale Bishop at that time told the broker that the "rents" for the three apartments were $57.50 a month for the first floor apartment, $150 for the second floor apartment, furnished, and $60 for the third floor apartment. The broker repeated these representations as to the rents to plaintiff. The broker also repeated to Bishop statements made to him by plaintiff that the latter was purchasing the property solely as an investment. The terms, together with a representation of the rents as stated to the broker, were embodied in a sales contract which was signed by plaintiff and also by the four sellers.

At the time scheduled for settlement of the transaction, August 21, 1945, the broker and vendors appeared at the title company, but plaintiff had previously left his check for the balance of the purchase price and departed. While at the title company the broker asked Bishop for the leases on the three apartments, and Bishop replied that he did not have the lease to apartment No. 2 and that the rent of $150 for this apartment, furnished, was before the Administrator of Rent Control for approval.

The broker thereupon stopped the settlement proceedings and verified the following facts, none of which had been told to him previously: that on January 1, 1941, apartment No. 2 was rented for $60 a month, unfurnished; that on June 8, 1945, the owners had filed an application with the Rent Administrator to change the monthly rental from $60 unfurnished to $150 furnished, and that this application was still pending before the Rent Administrator. The broker thereupon returned to the title company, advised Bishop that the rental of apartment No. 2 had been misrepresented to him, and that he was informing plaintiff of this fact. He did tell plaintiff, whereupon the latter stopped payment on the check which he had given for the balance

of the purchase price, rescinded the contract and demanded the return of his deposit.

Defendants had acquired the property in April 1945 and had redecorated apartment No. 2, furnished it, and rented it, including utilities, to six girls at $25 each per month, or a total of $150, beginning June 1, 1945. In September, after the sale had been rescinded, defendants were notified that the application filed with the Rent Administrator in June was not in proper form and on October 5, 1945, a new form was filed. On November 10 the Rent Administrator by order approved a ceiling of $100 per month, but on reconsideration a final order was issued fixing the rental for the apartment, furnished, at $130 a month. Subsequently, in November 1946, Bishop and his codefendants sold the property to a third party.

At the conclusion of the trial the court orally announced a finding in favor of plaintiff for the return of his deposit, adjudged other issues not pertinent to this appeal, and also decided as a matter of law that the broker was not entitled to recover the commission from Bishop and the other defendants. After a motion for a new trial or for judgment non obstante had been argued, the trial judge filed a written memorandum reaffirming his findings in favor of the broker on all factual disputes between him and the other defendants but changing his previous conclusion of law and holding that the broker was entitled to recover his commission.

On this appeal only three errors are assigned, namely: (1) that the trial court erred in ruling that the nondisclosure of the fact that the rent on apartment No. 2 had not been approved by the Rent Administrator amounted to a legal fraud; (2) that the trial court erred in ruling that the decision of the United States Court of Appeals for the District of Columbia in the case of Delsnider v. Gould, 81 U.S.App. D.C. 54, 154 F.2d 844, overruling a prior decision of this court, D.C.Mun.App., 42 A.2d 140, "changed" the law on the subject; and (3) that the trial court erred in granting judgment non obstante instead of merely granting a new trial.

The last point was not urged on argument. Appellants conceded that the only change made by the trial court was one of law, and that under such circumstances the trial court may grant a motion for judgment non obstante. There is no occasion, therefore, for us to consider the point further.[1] Furthermore, appellants do not question that if the ruling of the trial court on the issue of fraud was correct then the broker is entitled to recover his commission.

The general rules of law applicable to such cases have been stated by us very recently.[2] Defendants urge that the principles applicable here are that the law distinguishes between passive and active concealment, or in other words between mere silence and the suppression or concealment of a fact; that silence in order to constitute actionable fraud must relate to a material matter known to one party and which it is his legal duty to communicate to the other contracting party; that where the means of knowledge are at hand and equally available to both parties, if the purchaser does not avail himself of these means and opportunities he will not be heard to say that he has been deceived by the vendor's misrepresentations.

It is settled law, however, that a statement in a business transaction, which, while stating the truth as far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation;[3] also that a statement containing a half-truth may be as misleading as a statement wholly false and thus that a statement which contains only those matters which are favorable and omits all reference to those which are unfavorable is as much a false representation as if all

[1] See Rice v. Simmons, D.C.Mun.App., 53 A.2d 587.

[2] Rosenberg v. Howle et al., D.C.Mun. App., 56 A.2d 709.

[3] Atwood v. Chapman, 68 Me. 38, 28 Am.Rep. 5; Restatement, Torts (1938) § 529; see also Tyssowski v. F. H. Smith Co., 35 App.D.C. 403; Harper, Torts (1933) § 219; Restatement, Contracts (1932) §§ 471(c), 472(1) (b), (2).

the facts stated were untrue.[4] "Though one may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all, he must make a full and fair disclosure."[5] "A duty to speak may arise from partial disclosure; the speaker being under the duty of saying nothing, or to tell the whole truth."[6] "A statement literally true is actionable, if made to create an impression substantially false."[7]

We believe that the trial court applied these principles correctly in holding that the representation made by the vendors constituted legal fraud. That the representation as to the rent of the second floor apartment was material admits of no doubt, for the sellers were told that plaintiff wanted the building as an investment, and not for personal occupancy. The importance of the rentals was emphasized by their inclusion as a representation in the sales contract. Knowing this, the sellers stated merely that the rent on the second floor apartment was $150 a month, furnished, and failed to disclose that on January 1, 1941, the "test date" under the District of Columbia Rent Act,[8] the rent on the same apartment was $60 a month, unfurnished, and also failed to disclose that there was then pending before the Rent Administrator a petition, filed by the sellers only about two months previously, for approval of the $150 they represented as the "rent" for the apartment.

We believe, too, that in such a situation the rule of caveat emptor does not apply. The fact of the pendency of the rent application was peculiarly within the knowledge of the sellers for they had filed it, whereas the broker and the buyer could discover the facts only by examining the files of the Rent Administrator's office. A statement cited with approval by the United States Court of Appeals for the District of Columbia seems applicable here: "There is no rule of law which requires men in their business transactions to act upon the presumption that all men are knaves and liars, and which declares them guilty of negligence, and refuses them redress, whenever they fail to act on that presumption. The fraudulent vendor cannot escape liability by asking the law to applaud his fraud and condemn his victim for his credulity."[9]

It is defendants' position, however, that none of the rules of law applicable to fraud are involved here because, they claim, the $150 rental for the second floor apartment was not only the actual rent being collected, but it was the legal rental. They base this contention upon the decision of the case of Delsnider v. Gould, 81 U.S.App.D.C. 54, 154 F.2d 844.

The effect of that decision was that even though "premises" were rented January 1, 1941, and a rent ceiling thus became effective, nevertheless if the premises are so materially changed as to become "new housing accommodations", then the 1941 ceiling no longer governs and the landlord is entitled to charge a greater amount which remains effective until changed by the Rent Administrator. The court held, further, that the question whether the housing accommodations involved are new ones not rented on the critical date or are old ones with substantial capital improvements or alterations, is a question of fact, which must, unless the evidence is compelling one way or another, be decided by the jury.

In this case the trial court ruled, correctly, that this situation had no bearing on the question of fraud. The important point is that the pendency of the proceedings before the Rent Administrator was not disclosed to the broker nor to the buyer.

---

[4] Restatement, Torts (1938) § 529, comment a.

[5] Sullivan v. Helbing, 66 Cal.App. 478, 226 P. 803, 805; Pohl v. Mills, 218 Cal. 641, 24 P.2d 476.

[6] Dennis v. Thomson, 240 Ky. 727, 43 S.W.2d 18, 23.

[7] Cahill v. Readon, 85 Colo. 9, 273 P. 653, 655.

[8] Code 1940 (Supp. V), § 45—1601 et seq.

[9] Bailey v. Smith, 57 App.D.C. 369, 371, 23 F.2d 977, 979; cf. Lester v. Superior Motor Car., Inc., 73 App.D. C. 171, 117 F.2d 780.

All these facts had a bearing on the rental value of the property; all of them were known to the sellers but none were disclosed to the broker or to the buyer. That they were important is shown by the fact the broker, as soon as he learned of them, disclosed them to the buyer as he was bound to do and the buyer promptly rescinded the contract and sued to recover his deposit. It is of some significance, we believe, that the sellers have acquiesced in the judgment returning the deposit to the plaintiff. The effect of the trial court's findings was that the sellers were wholly responsible for the failure of the transaction. That under such circumstances the broker was entitled to his commission we have no doubt.

Affirmed.

HOOD, Associate Judge (concurring).

Because of my dissent in Tucker v. Beazley, D.C.Mun.App., 57 A.2d 191, I feel I should state my reason for joining in this opinion. Here the seller stated the rent for the apartment and inserted it in the contract of sale, but did not disclose that he had initiated proceedings before the Administrator which might, and did, result in substantial reduction of the rent. This was a willful suppression of a material fact and, I think, distinguishes this case from the Tucker case.