484 A.2d 250 (1984)
FAMILY CONSTRUCTION and Eagle Enterprises and Investment, Ltd., Petitioner,
v.
DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Respondent.
Nos. 83-805, 83-948.
District of Columbia Court of Appeals.
Argued June 12, 1984.
Decided November 2, 1984.
*251 Kurt Berlin, Washington, D.C., for petitioner. Michael E. Brand and Kenneth J. Loewinger, Washington, D.C., were on brief.
Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief for respondent.
Before PRYOR, Chief Judge, and BELSON, Associate Judge, and PAIR, Associate Judge, Retired.
PAIR, Associate Judge, Retired.
Brought into question by this petition for review is an order of the District of Columbia Department of Consumer and Regulatory Affairs (respondent) voiding two installment sales contracts made by petitioner in the course of its business as a home improvement contractor. Petitioner contends that respondent erred (1) in making applicable to the two contracts, Consumer Retail Credit Regulation 5P;[1] and (2) in making applicable to one, the Home Solicitation Sales Act, D.C.Code § 28-3811 (1981). Finding no error, we affirm.
On or about December 8, 1982, petitioner contracted with Mrs. Alma Mitchell for the installation of 10 windows, including a picture window, for the contract price of $3,870.40, payable $1,000 down and the balance in 24 consecutive monthly installments of $119.60, commencing 15 days after January 15, 1983, the estimated completion *252 date. The understanding was that the picture window would be installed by Christmas. Complainant Mitchell made the initial payment but shortly thereafter was informed that the picture window would not be installed by Christmas. Later, it was ascertained that on the instruction of petitioner, delivery of the windows for installation had been indefinitely delayed. Mrs. Mitchell then complained to respondent and demanded of petitioner the return of her $1,000 down payment, which was refused.
Following a home solicitation and extended negotiation, petitioner, on or about February 4, 1983,[2] contracted with Ms. Tahiira Lee and Mr. Norman Toney for substantial renovation of the basement of their home at 220 Seaton Place, N.E. (the Lee and Toney contract). The contract price was $18,000 in cash or 108 monthly installments of $273.32, totalling $29,518.56. According to Lee and Toney, they were induced to enter into the contract by petitioner's promise to hire Toney as a laborer during the renovation work.
Work was commenced on the basement February 7, and Toney worked for petitioner that day, but because of his unsatisfactory performance, he was told not to continue. On February 8, Lee and Toney informed petitioner that they were going to cancel the contract and ordered petitioner to cease performance. Approximately one week later, Lee and Toney filed a complaint with respondent.
A hearing on both complaints was commenced April 20 before an administrative law judge. After two days of testimony, the judge ruled that the petitioner was subject to the requirements of the Consumer Credit Retail Regulations as a "retail seller" engaged in retail installment transactions. 5P DCRR § 1.1 (k). By 5P DCRR § 2.1, petitioner, as a retail seller, was required to register with the Office of Consumer Affairs before engaging in the home improvement business. The failure to comply with registration requirements, ruled the administrative law judge, rendered the contracts void. The administrative law judge also ruled that the Lee/Toney contract had been cancelled in conformance with the terms of the Home Solicitation Sales Act, D.C.Code § 28-3811 (1981). That section provides for a "cooling off" period during which a consumer has the right to cancel a home solicitation contract until midnight of the third business day after the day on which the contract was executed. In addition to declaring the contracts void, the judge ordered petitioner to refund Mitchell's down payment and to restore the Lee/Toney basement to its previous condition. Petitioner then brought this petition for review.[3]

I
Petitioner first contends that the Consumer Retail Credit Regulations do not apply to home improvement contractors and that respondent therefore erred in finding that it was required to register under the Regulations. In reviewing the order, we are mindful that respondent is charged with administration of Title 5P, and substantial deference is therefore owed to its interpretation of the Regulations. See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).
The Consumer Retail Credit Regulations are applicable to "retail sellers" and "sales finance companies." Petitioner *253 is not a sales finance company and is therefore subject to Title 5P only if it is a retail seller. As provided in 5P DCRR § 1.1 (k), a retail seller is any person or entity "engaged in the District of Columbia in the business of selling consumer goods or services involving retail installment transactions." Petitioner does not dispute that the Mitchell contract was a retail installment transaction, but it does contend that the transaction did not involve a "consumer good" and therefore did not render it a "retail seller" within the scope of Title 5P.[4]
"Consumer goods" is defined in 5P DCRR § 1.1 (b) as "tangible chattels bought by a natural person for use primarily for personal, family, or household purposes." (Emphasis added.) Services are defined in 5P DCRR § 1.1 (n) as "... work, labor, or other kind of activity furnished... in connection with the delivery, installation, servicing, repair, or improvement of consumer goods...." Petitioner contends that the definition should be construed to exclude home improvement contracts, as such contracts, it is argued, concern realty and not tangible chattels to be used for "personal, family, or household purposes." This argument, however, ignores the reality that installation of a tangible chattel is often the essence of a home improvement contract. Exclusion of such transactions from the scope of Title 5P would be contrary to the express language of the Regulations. It would be illogical to exclude a transaction from the reach of the Consumer Retail Credit Regulations merely because the underlying agreement has been labeled a "home improvement contract" by one of the parties. The proper approach is to view the substance of an agreement to determine whether it involves an installment purchase of a tangible chattel that is to be used for personal, family, or household purposes.
With regard to the Mitchell contract, it is undisputed that the transaction involved a credit purchase of windows that were to be installed in Mitchell's residence. The windows are fairly categorized as "chattels," and there is nothing in the record to indicate that the purchase was for a business-related purpose. Rather, the record indicates that the windows were to be installed in Mitchell's residence, and the only possible inference is that Mrs. Mitchell merely desired to improve her home. Thus, there was substantial evidence in the record to support the finding that the extension of credit for the purchase of the windows was primarily for "personal or household purposes."[5] Respondent *254 did not err in finding that the contract concerned a retail installment transaction that required petitioner to register as a retail seller under the Consumer Retail Credit Regulations.
This court has consistently held that a contract made in violation of a statute designed for police or regulatory purposes is void and does not confer rights upon a wrongdoer. E.g., Erwin v. Craft, 452 A.2d 971, 972 (D.C.1982) (per curiam) (home improvement contract rendered void when contractor accepted payment before completion of work); Highpoint Townhouses, Inc. v. Rapp, 423 A.2d 932, 936 (D.C.1980) (contract to perform plumbing service unenforceable where plumbing company lacked master plumber's license); Truitt v. Miller, 407 A.2d 1073, 1079 (D.C.1979) (home improvement contract void where contractor was unlicensed); Miller v. Peoples Contractors, Ltd., 257 A.2d 476, 477 (D.C.1969) (same); Holiday Homes, Inc. v. Briley, 122 A.2d 229, 232 (D.C.1956) (architect denied recovery for period during which he had failed to renew architect's license); Rubin v. Douglas, 59 A.2d 690, 691 (D.C.1948) (patient can recover fee paid to unlicensed practitioner of "healing art"). This case is indistinguishable from our prior decisions involving violations of regulatory statutes. The Consumer Credit Retail Regulations were designed for protection of the public, and petitioner's failure to register thereunder rendered the Mitchell contract void. Return of the down payment was an appropriate remedy.

II
Turning to the second contract, respondent found that Lee and Toney effectively exercised their right to cancel the agreement within the three-day "cooling-off" period provided for in the statute governing home solicitation sales.[6] Petitioner contends that this finding is not supported by substantial evidence in the record.[7]
Under the Home Solicitation Sales provision of the D.C.Code, a buyer "has the right to cancel a home solicitation sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase which complies with this section." § 28-3811(b). It is uncontested that the Lee/Toney contract arose out of a home solicitation sale and is therefore governed by § 28-3811. Lee and Toney therefore had the right to cancel the agreement within the three-day "cooling-off" period.
As provided in § 28-3811(c), to cancel a home solicitation sale, the buyer must give "written notice of cancellation to the seller at the address stated in the agreement or *255 offer to purchase." If mailed, notice of cancellation is deemed to have been given when deposited in a mail box with prepaid postage and proper address affixed. § 28-3811(d).
Here, the Lee/Toney agreement was signed on either Thursday, February 3 or Friday, February 4. The third business day after February 3 was Tuesday, February 8. Respondent found that Lee and Toney effectively communicated their desire to cancel prior to midnight of February 8. The evidence indicates that prior to February 8, Lee mailed a notice of cancellation to petitioner's president, William Bynum. According to Lee, this notice, which was in addition to oral communication of their desire to cancel, was returned in the mail after Bynum refused to accept it. The notice was produced and admitted into evidence at the hearing. Given this record, it is clear that there was substantial evidence to support the finding that Lee and Toney effectively exercised their statutory right to cancel the agreement.[8] The contract was properly found to be void and the relief ordered was appropriate.[9]
Pursuant to respondent's order which we hereby affirm, petitioner is ordered to return the down payment tendered by Mrs. Mitchell and to return the basement of Lee and Toney to the condition it was in before petitioner commenced its work.
So Ordered.
NOTES
[1] The Consumer Retail Credit Regulations were contained in Title 5P of the District of Columbia Rules and Regulations when this case was argued and decided at the administrative level. They are now found in Chapter 1 of Title 16 of the D.C. Municipal Regulations.
[2] Respondent found that the contract was entered into on either February 3, 1983 or February 4, 1983.
[3] Petitioner has also noted an appeal from the administrative law judge's order directing it to pay respondent reasonable costs incurred in investigating, negotiating, and hearing the complaints. That order was part of the decision on the merits of the complaints against petitioner. A review of the record indicates, however, that the judge never issued an order fixing the amount of such costs and on September 16, 1983, entered an order staying the determination of an amount until resolution of the appeal on the merits. As a result, the award of costs is not a final order and is therefore not properly before this court.
[4] Petitioner urges that the provisions of Title 5Y, the District of Columbia Home Improvement Licensing Regulations, should be viewed as the only regulations governing the activities of home improvement contractors. Home improvement transactions, it is argued, were not intended to be governed by Title 5P. This contention is without merit. There is no indication in Title 5Y, which has been recodified as Chapter 8 of Title 16 of the D.C. Municipal Regulations, that the provisions therein are the exclusive regulations for home improvement contractors. Moreover, to rule that Title 5P does not apply to such contractors would be to ignore the reality that home improvement contracts often involve credit purchases of consumer goods that were intended to be covered by Title 5P.
[5] Compliance with the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. (1982), is required under 5P DCRR § 3.1. In defining "consumer transaction" under the Act, it is provided in § 1602 (h):

The adjective `consumer' used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.
In determining whether the property, money or services involved in the transaction is for personal, family, or household purposes, courts enforcing the Truth in Lending Act have generally examined the transactions as a whole, focusing on the purposes for which credit was extended rather than the nature of the goods or services involved. See, e.g., Tower v. Moss, 625 F.2d 1161, 1166-67 (5th Cir.1980) (credit extended by home improvement contractor in connection with home repairs found to be a credit transaction primarily for personal, family, or household purposes); Gallegos v. Stokes, 593 F.2d 372, 375 (10th Cir.1979) (credit transaction for purchase of truck to be used for non-commercial reasons found to be primarily for personal, family, and household purposes); Hughes v. Cardinal Federal Savings & Loan Association, 566 F.Supp. 834, 845 (S.D.Ohio 1983) (loan extended for home financing was for personal, family, or household purposes even though owner leased part of the home); Gerasta v. Hibernia National Bank, 411 F.Supp. 176, 185 (E.D.La.1976), modified on other grounds, 575 F.2d 580 (5th Cir. 1978) (loan extended for home improvement work was a credit transaction primarily for personal, family, or household purposes).
In concluding that petitioner's extension of credit to Mrs. Mitchell was primarily for personal or household purposes, we are persuaded that the proper focus is on the purpose for the extension of credit and not on the nature of the consumer good that was purchased. Here, Mrs. Mitchell intended to use the extension of credit to improve her home.
[6] Petitioner also contends that the absence in the complaints of any claim or defense arising under the Home Solicitation Sales provision of D.C.Code § 28-3811 (1981) precluded the administrative law judge from reaching such issues. Issues not raised in pleadings but nevertheless argued by implied consent of the parties are treated as though raised in the pleadings. See Super.Ct.Civ.R. 15(b). Here, petitioner did not object to those portions of the hearing concerned with Home Solicitation Act issues. It was proper, therefore, for the administrative law judge to reach the merits of those issues.
[7] Petitioner also contends that the administrative law judge lacked jurisdiction to find violations of Title 5Y, the Home Improvement Licensing Regulations. A review of the order indicates that the sanctions imposed were not based on violations of Title 5Y. We therefore do not reach the merits of petitioner's contention.
[8] Petitioner contends that at the time of the administrative hearing in this case, respondent had failed to promulgate rules of procedure to govern its hearings. This failure, it is argued, rendered the hearing and respondent's decision invalid.

Where the conduct of an agency hearing is challenged and procedural rules have not been adopted by the agency, we review the hearing to determine if it was conducted in conformance with "well established rules of procedure generally applicable to agency adjudications." Brown v. District of Columbia Board of Zoning Adjustment, 413 A.2d 1276, 1280 (D.C.1980) (citations omitted). Here, petitioner has not alleged any prejudice resulting from the manner in which the hearing was conducted, and our review indicates that there would be no basis for such an assertion. The hearing fully complied with the procedures set forth in the District of Columbia Administrative Procedure Act, D.C.Code § 1-1509 (1981). Petitioner's challenge to the administrative law judge's findings of fact and conclusions of law is also without merit.
[9] Because we conclude that the Lee/Toney contract was cancelled under the Home Solicitation Sales statute, we do not reach petitioner's other contention that respondent erred in finding that the contract was in violation of Title 5P.