**Edward BECKFORD, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 95–01277.**

United States District Court,
District of Columbia.

Jan. 10, 1997.

**2.** *Starnes,* 512 F.2d at 933.

**6**

Keith W. Donahoe, Koonz, McKenney, Johnson & Regan, P.C., Washington, DC, for plaintiff.

Roderick Lynn Thomas, Kathryn Good, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

The Court has conducted trial on the above-captioned case on various days during the period beginning on December 6, 1996 and ending on January 8, 1997. Plaintiff has brought this action for alleged personal injury and pain and suffering against the United States pursuant to the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 2671 et seq.[1] He alleges that the government's negligence with respect to the placement and painting of a steel bollard on a brick path located within the C & O Canal National Historic Park in Washington, D.C. was the direct and proximate cause of injuries that he suffered on June 27, 1993, and he asks for damages in the sum of $500,000. The government denies that it was negligent with respect to the placement or painting of the steel bollard and claims that any recovery should be barred by Plaintiff's contributory negligence or his assumption of the risk. The government also claims to be immunized against recovery by the discretionary function exception of the FTCA.

The Court's findings of fact and conclusions of law follow:

### FINDINGS OF FACT

On the afternoon of June 27, 1993, Plaintiff purchased a bicycle at a store at the Fair Oaks Mall in Fairfax, Virginia. He was accompanied by a friend, Mr. Timothy Lara. Plaintiff and Mr. Lara then returned to Mr. Lara's apartment near Dupont Circle in Washington, D.C. to assemble the bicycle and eat a meal. During the course of the meal, Plaintiff drank two beers. He also had several beers later in the day. In the late afternoon following the meal, Plaintiff and Mr. Lara left Mr. Lara's apartment to go for an extended bicycle ride.

At approximately 10:30 p.m., while still on the bicycle ride, Plaintiff and Mr. Lara were proceeding from the Mall area of Washington, D.C. into Georgetown via the Rock Creek Parkway. Neither Plaintiff nor Mr. Lara had a light on his bicycle although the sun had set several hours earlier, at 8:37 p.m. As they approached Georgetown, Plaintiff and Mr. Lara proceeded down a brick path, located within the C & O Canal National Historic Park. The brick path is owned by the United States and maintained by the

---

1. Plaintiff's complaint in this matter was filed on July 7, 1995. Prior to filing the complaint, Plaintiff had filed an administrative complaint under the FTCA. His administrative complaint was denied by the Department of the Interior in a letter dated April 14, 1995.

National Park Service (the "Park Service"). Bicycling is common on the brick path.

Approximately forty-four feet from the entrance to the brick path, the Park Service had placed a thirty-four inch bollard in order to keep vehicles off the brick path. The bollard was placed in the center of the brick path and was painted National Park Service brown. Plaintiff followed Mr. Lara down the brick path and Mr. Lara, who was familiar with the route, skirted the bollard without incident. However, Plaintiff failed to see the bollard as he descended the slope of the brick path and struck the bollard with his left knee, severely injuring it. He was evacuated by ambulance to the George Washington University Emergency Room following the accident, where he underwent orthopedic surgery for a fractured knee cap (patella) at approximately 2 a.m. on the morning of June 28, 1993.

Plaintiff subsequently had to undergo additional corrective surgery and still has a metal wire in his knee. He wore a cast on his left leg for an extended period of time. The open left patella fracture which Plaintiff sustained resulted in a ten percent permanent impairment of the left lower extremity. In total, Plaintiff has incurred Twenty–Eight Thousand Two Hundred Sixty–Nine Dollars ($28,269.00) in medical expenses as a result of the injury.

## CONCLUSIONS OF LAW

### I. Negligence of the Park Service

The FTCA provides a basis for recovery against the United States for the negligent or wrongful actions of its employees. 28 U.S.C. § 2675. The potential liability of the United States is assessed by reference to the law of the jurisdiction in which the alleged negligent or wrongful acts giving rise to the action occurred. 28 U.S.C. § 2674.

Under negligence law in the District of Columbia, in order to recover, Plaintiff must prove (1) that Defendant breached a duty of care owed to Plaintiff, (2) that Defendant's breach of duty was the proximate cause of Plaintiff's injuries, and (3) that Plaintiff sustained damages as a result thereof. See, for example, Williams v. Baker, 572 A.2d 1062 (D.C.1990); District of Columbia v. Cooper, 483 A.2d 317, 321 (D.C.1984). The law of negligence in the District of Columbia does not acknowledge differing standards of care, but rather requires adherence to a uniform standard of conduct, which is reasonable care under the circumstances. Morgan v. District of Columbia, 468 A.2d 1306 (D.C. 1983).

The Court finds that Plaintiff has established each element of his negligence claim.

A. **Duty.** The United States, as a landowner through its agent, the National Park Service, owes a common law duty of reasonable care to all persons lawfully on its land. See Smith v. Arbaugh's Restaurant, Inc., 469 F.2d 97, 100 (D.C.1972). See also Holland v. Baltimore & Ohio R.R. Co., 431 A.2d 597 (D.C.1981) (en banc); Sandoe v. Lefta Associates, 559 A.2d 732 (D.C.1988). The standard of care owed to park users is that of reasonable care under all of the circumstances and includes a duty to conduct reasonable supervision and inspection of the land to identify and guard against foreseeable dangers to those on the land. Arbaugh, 469 F.2d at 100. In determining the reasonableness of the landowner's actions, the Court may weigh the foreseeability of the harm and the relative expense and difficulty of avoiding the harm. Id.

In this case, the Court must determine whether the Park Service exercised reasonable care in the maintenance of the C & O Canal brick path. To make this determination, the Court must ascertain whether a reasonable owner and operator of the C & O Canal brick path would have placed a dark brown bollard in the center of a brick path known to be used commonly by bicyclists.

The Park Service did not exercise reasonable care in this case and thereby violated its duty to Plaintiff. The Park Service should have foreseen the risk of injury to "night bicyclists" such as Plaintiff, especially in such a well-traveled area. The bollard is located in an area without overhead light which, in summer time, is made darker by the foliage of surrounding trees. The government did not establish that ambient light from adja-

cent streets and a nearby hotel provided adequate lighting.[2]

Indeed, the government should have been on notice that the bollard was unsafe as a result of its review of the 1981 Guide for the Development of Bicycle Facilities prepared by the American Association of State Highway and Transportation Officials (the "AASHTO Guidelines"). The AASHTO Guidelines have been adopted by the United States as the standard by which bicycle facilities after 1984 shall be constructed. On page 27 of the 1981 AASHTO Guidelines and page 36 of the 1991 AASHTO Guidelines, the following is stated:

> "Provisions can be made for a lockable, removable post to permit entrance by authorized vehicles. The post should be permanently reflectorized for nighttime visibility and painted a bright color for improved daytime visibility."

The bollard with which Plaintiff collided was neither painted a bright color nor reflectorized.

The government claims that the AASHTO Guidelines are inapplicable in this case because they apply only to bicycle trails built after 1983 [3] and because they are written in precatory language. That argument does not provide a justification for the government to fail to correct known "booby traps." The AASHTO Guidelines should have put the Park Service on notice of a potential harm which could have been corrected easily and inexpensively. It would have taken little time or money for the government to have painted and affixed reflector tape to the brown bollard. The failure of the Park Service to follow the recommendations of the AASHTO Guidelines is evidence of a failure to exercise reasonable care.

Because this foreseeable harm could have been corrected easily by the Park Service, the government breached its duty of care to Plaintiff in this case.

**B. Proximate Cause.** The Park Service placed a brown, unreflectorized bollard in the middle of the brick path on the C & O Canal National Historic Park. The Court finds that the placement and painting of the bollard was the proximate cause of Plaintiff's accident on June 27, 1993. The government argues that Plaintiff has not demonstrated that if the color of the bollard was changed, for instance, the bollard would be significantly more visible and the accident would have been prevented. The government's standard, if applied, would impose an unfair burden on Plaintiff which could not conceivably be met.

**C. Damages.** Plaintiff has established $28,689 in medical expenses and a 10% permanent partial disability to the left lower extremity. He also claims that, in addition to suffering severe pain and suffering, his injuries have had a significant impact on his recreational activities and employment. The government claims that Plaintiff has returned to a full state of health in which he has a full range of motion in his knee and is able to resume all activities without restriction.

The Court finds that Plaintiff has established a claim for his medical expenses, a 10% permanent partial disability and pain and suffering.

## II.  The Park Service's Defenses

The Park Service sets forth three defenses: (1) assumption of the risk; (2) contributory negligence; and (3) the discretionary function exception. None has been established as a basis for barring recovery by Plaintiff.

**A. Assumption of the Risk.** Assumption of the risk is an available defense when a plaintiff has voluntarily incurred a known risk. *District of Columbia v. Mitch-*

---

2.  The government has argued that Plaintiff was bicycle riding in the C & O Canal National Historic Park after dark, when the park was technically closed. The government erected no "closed after dark" signs, nor did it publicize widely the fact that the park was closed after dark, even though it was well aware that numerous pedestrians and bicycle riders used the park after dark.

The Court rejects completely the government's argument on this point. U.S. park lands cannot be closed on the basis of a virtually non-public notice.

3.  The C & O Canal brick path upon which Plaintiff was injured was constructed in 1977.

*ell,* 533 A.2d 629, 639 (D.C.1987). In order for the Park Service to prevail in its burden to prove assumption of the risk, the evidence must show that Plaintiff recognized and appreciated the risk presented by unlit bollards on bicycle paths.

The evidence failed to show any such recognition or appreciation of the risks of unlit bollards on bicycle paths by Plaintiff. Plaintiff was not familiar with the bicycle paths in the area, so he could not have been aware of the dangers posed by unlit bollards. Since Plaintiff did not know of the risk, he cannot be found to have voluntarily assumed a known risk.

**B. Contributory Negligence.** It is the law in the District of Columbia that contributory negligence on the part of a plaintiff would bar recovery. *Mitchell,* 533 A.2d at 629; *District of Columbia v. Brown,* 589 A.2d 384, 387 (D.C.1991). The government argues that Plaintiff was contributorily negligent in this case for failing to operate his bicycle at night with a light. In order to succeed with a defense of contributory negligence in this case, the government has the burden of proving (1) that Plaintiff was negligent and (2) that Plaintiff's negligence was the proximate cause of the accident.

It is undisputed that Plaintiff had no light on his bicycle at the time of the accident. Both Plaintiff's and Defendant's experts testified that it is unsafe to ride a bicycle at night in a dark area without an adequate headlight which illuminates the path of the rider. The law of the District of Columbia also requires a light if a bicyclist rides at night. 18 District of Columbia Municipal Regulations § 1204.2 ("Reg 1204.2"). Plaintiff possibly was remiss in not having a light on his bicycle.

But Plaintiff's omission in failing to have a light on his bicycle was not a proximate cause of the accident. Most lights available to Plaintiff would not have illuminated the bollard and thus would not have prevented the accident. Reg 1204.2 only requires that a night bicyclist have a headlamp, leg light or arm light visible from five hundred feet; its intent is to increase the visibility of bicycle riders to motor vehicle operators. Plaintiff

could have met the requirement of Reg 1204.2 as most bicycle operators do, in a manner that would not have enhanced his ability to have seen the brown bollard at night. While it is true that Plaintiff had several beers on the day of the accident, the government has not established that Plaintiff was substantially impaired.

In sum, the government has not established that Plaintiff was contributorily negligent in this matter.

C. **Discretionary Function Exemption.** The discretionary function exemption to the FTCA affords protection against tort liability in 28 U.S.C. § 2680(a) for:

> "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

The Supreme Court has stated that "where there is room for policy judgment and decision, there is discretion" which the United States may exercise or even abuse without incurring tort liability. *Dalehite v. United States,* 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953).

The Court finds that the discretionary function exemption does not apply in this case. Any decisions regarding the maintenance of a brown bollard on the C & O Canal National Historic Park could not rise to the level of issues so fraught with policy that the exemption should apply since the "nature" of the decision did not implicate policy judgment. *Cope v. Scott,* 45 F.3d 445, 449 (D.C.Cir.1995).

## CONCLUSION

The issue in this case consists of both the questionable placement of a restraining device in the middle of a pedestrian and bicycle path and the failure to properly illuminate the restraining device. The deficiencies could have been easily overcome by the Park Service by painting the bollard with a light iridescent paint or by placing reflective strips on the bollard. In the condition that the bollard was in at the time of the accident, it was a plain and simple "booby trap" placed in

a much traveled area adjacent to the well known, highly populated Georgetown area of Washington, D.C. Indeed, the bollard is located behind Washington, D.C.'s popular "Four Seasons" Hotel. This is a heavily traversed area where pedestrians and bicyclists can be found at all hours, especially during the days and nights of summer.[4]

The Court finds that the government was negligent both with respect to the placement of the bollard in the middle of a pedestrian and bicycle path and with respect to its failure to properly illuminate the bollard. The government's negligence was the direct and proximate cause of Plaintiff's bicycle accident on June 27, 1993. The government has not established that its defenses of assumption of the risk, contributory negligence or the discretionary function exemption should bar recovery. The Court awards damages to Plaintiff in the sum of one hundred and ten thousand dollars ($110,000), plus court costs.

---

**4.** The Court viewed the scene of the accident on December 10, 1996. The Court took particular notice of the bollard, with its dark brown coating—the condition it was in at the time of the accident. The Court observed that the path was narrow and the bollard was erected in the middle of the path. The bollard was in no way illuminated so that it would be easily noticeable to visitors to the park. The Court also took note that the bollard was located only a short distance from the beginning of the path (44 feet) and that there was a discernible downward slope leading to the site where the bollard was placed.