John M. **APPLETON**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

No. Civ.A. 98–344(RMU).

United States District Court,
District of Columbia.

Aug. 31, 1999.

Robert G. Nath, Odin, Feldman & Pittleman, Fairfax, VA, for plaintiff, John M. Appleton.

Doris Coles Hough, District Court Civil Division, United States Attorney's Office, Washington, DC, for defendant, United States of America (Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms).

### *MEMORANDUM OPINION*

URBINA, District Judge.

**Granting the Motion to Dismiss as to Count 1 and Count 3; Denying the Plaintiff's Motion for Summary Judgment as to Count 1 and Count 3;**

**Denying the Motion to Dismiss as to Count 2; Denying without Prejudice the Plaintiff's Motion for Summary Judgment as to Count 2 Ordering Discovery Related to Count 2**

## I. INTRODUCTION

This matter is before the court upon the defendant's motion to dismiss for failure to

state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and the plaintiff's motion for summary judgment. The plaintiff, John M. Appleton, filed a three-count complaint alleging negligence and arbitrary and capricious exercise of power on the part of the Treasury Department's Bureau of Alcohol Tobacco and Firearms ("ATF") and the State Department ("State"). Specifically, Mr. Appleton contends that ATF was negligent in its approval and subsequent revocation of his application for permits to import ammunition made in South Africa. Mr. Appleton also alleges that State acted arbitrarily and capriciously by "debarring" the ammunition's manufacturer under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778 *et seq.*

Pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680, the defendant, the United States of America ("the Government"), asks the court to dismiss the complaint for failure to state a claim. Specifically, the Government asserts that the FTCA shields the Government from suit for actions which were taken in the performance of a "discretionary function" or which allegedly interfered with contract rights. Alternatively, the Government argues that Mr. Appleton was contributorily negligent in the approval of the permits. (*See* Mot. to Dis. at 1–2).

For the reasons which follow, the court concludes that the FTCA's contract interference exception, 28 U.S.C. § 2680(h), bars Mr. Appleton's claim that ATF interfered with his contractual relations with a third party. Accordingly, the court will grant the defendant's motion to dismiss as to counts One and Three and deny the plaintiff's motion for summary judgment on counts One and Three.

The court finds that there remains a genuine issue as to whether or not ATF exercised policy-based discretion in approving Mr. Appleton's import applications. In addition, the court finds that there is a genuine issue as to whether or not ATF acted negligently in approving

Mr. Appleton's applications. Accordingly, the court will deny the defendant's motion to dismiss count 2; the court will also deny without prejudice the plaintiff's motion for summary judgment as to count 2. This leaves both parties free to file motions for summary judgment on count 2 as outlined in the attached Order.

## II. BACKGROUND

Mr. Appleton is a licensed arms dealer under the AECA, 22 U.S.C. § 2778 and 22 C.F.R. §§ 120–130. In 1994, Tony Slatter, an arms broker in England, offered to sell Mr. Appleton ammunition imported from South Africa. Mr. Appleton submitted five "ATF Form 6" import permit applications to ATF listing "State Arsenal" as the manufacturer of the ammunition. (*See* Appleton Dec. ¶ 6.) ATF approved the import permits over a period of time between October 1994 and January 1995. Mr. Appleton then contracted to resell the ammunition to an arms dealer in Illinois. (*See* Comp. ¶ 14.) Mr. Appleton alleges that he made every effort to complete the permit applications properly. Specifically, he maintains that he supplied all the information he could obtain about the identity of the manufacturer of the ammunition. Mr. Appleton claims that he asked Mr. Slatter for information about Slatter's supplier and about the original manufacturer. Mr. Slatter professed not to know who the manufacturer was and also indicated that he was unwilling to divulge the identity of his supplier for proprietary reasons. (*See* Pl.'s Mot. for Summ.J. at 5–6.) Nonetheless, the Government maintains that Mr. Appleton could have asked Mr. Slatter for additional information at the time of their negotiations which would have revealed that the ammunition was in a crate marked "ARMSCOR." ATF was able to determine the manufacturer of the ammunition based on Mr. Appleton's submission of a drawing of the "headstamp" markings on the ammunition during a subsequent investigation. Accordingly, the Government argues that Mr. Appleton could and should have requested the headstamp markings

from Mr. Slatter before submitting his applications. (*See* Opp. to Pl.'s Mot. for Summ.J. at 8–10.)

When the ammunition arrived in the United States in February 1995, ATF initiated an investigation into the identity of the manufacturer. ATF discovered that the ammunition had been manufactured by Pretoria Metal Pressings Ltd. ("PMP"), a different company than the "State Arsenal" Mr. Appleton named in his applications. During the investigation, Mr. Appleton learned that the ammunition was made by PMP in 1983, delivered to the South African Defense Force directly after production and sold at some unspecified date to a British concern called TSF. (*See* Pl's Mot. for Summ.J., Ex. 20.) Based on a State Department and Treasury Department policy of debarring certain South African arms manufacturers, including PMP, ATF revoked Mr. Appleton's permits in March 1995. *See* 27 C.F.R. § 47.55.[1] Subsequently, Mr. Appleton breached his contract with the domestic arms dealer for the resale of the ammunition. In May 1996, Mr. Appleton filed an administrative claim with ATF and the State Department. ATF denied the claim in August 1997. Mr. Appleton subsequently initiated the instant action.

## III. DISCUSSION

### A. Legal Standard

A motion to dismiss for failure to state a claim upon which relief can be granted tests not whether the plaintiff will prevail on the merits, but instead whether or not he has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Fed. R.Civ.P. 12(b)(6). The court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984);

*Atchinson v. D.C.*, 73 F.3d 418, 421 (D.C.Cir.1996). In deciding such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Maljack Prods. v. Motion Picture Ass'n*, 52 F.3d 373, 375 (D.C.Cir.1995). The court need not, however, accept as true the plaintiff's legal conclusions. *See Taylor v. F.D.I.C.*, 132 F.3d 753, 762 (D.C.Cir.1997).

### B. The Defendant's Motion to Dismiss under the Interference with Contract Exception of the Federal Tort Claims Act

The Government's motion to dismiss asserts that three factors bar Mr. Appleton from suing: (1) the FTCA's discretionary function exception, 28 U.S.C. § 2680(a); (2) the FTCA's interference with contract rights exception, 28 U.S.C. § 2680(h); and (3) the absence of an actionable duty to use due care in approving and revoking firearms import permits. For the following reasons, Mr. Appleton's claim as to contract interference will be dismissed under the FTCA's contract exception, 28 U.S.C. § 2680(h).

#### 1. The Interference with Contract Exception, 28 U.S.C. § 2680(h)

■ The FTCA provides that the United States retains sovereign immunity for any *"claim[s] arising out of* assault, battery, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or *interference with contract rights."* 28 U.S.C. § 2680(h) (hereinafter referred to as "the contract exception").

As a preliminary matter, courts in this Circuit have not been reluctant to dismiss claims pursuant to the FTCA's contract exception. *See, e.g., United States Information Agency v. Krc*, 989 F.2d 1211 (D.C.Cir.1993); *Art Metal–U.S.A. v. Unit-*

---

**1.** 27 C.F.R. § 47.55 states that "The administration of the provisions of this part will be subject to the guidance of the Secretaries of State and Defense on matters affecting world peace and the external security and foreign policy of the United States."

ed States, 753 F.2d 1151 (D.C.Cir.1985); SEC v. The Better Life Club, 995 F.Supp. 167 (D.D.C.1998), aff'd, 1999 WL 236885 (D.C.Cir.1999); Smith v. Pena, 1998 WL 164774 (D.D.C.1998); Claasen v. Brown, 1996 WL 79490 (D.D.C.1996); Shipkovitz v. Mosbacher, 1992 WL 394489 (D.C.Cir. 1992); Taxay v. United States, 345 F.Supp. 1284 (D.D.C.1972), aff'd, 487 F.2d 1214 (D.C.Cir.1973).

The contract exception has been fairly broadly construed by courts in this Circuit. In Art Metal, the plaintiff supplied office furniture to the government through GSA contracts. See Art Metal, 753 F.2d at 1153. In the wake of newspaper articles accusing Art Metal of "serious misdeeds and improprieties" in its relationship with GSA, GSA halted all contracts with Art Metal. See id. Art Metal sued the Government, alleging negligence on the part of GSA, interference with prospective advantage and injurious falsehood. See id. On appeal from an order granting a motion to dismiss, the D.C. Circuit held that interference with prospective economic advantage fell within the purview of the contract exception. See id. at 1154. It was immaterial whether or not Art Metal had an existing contract with a third party; either way, the claim was barred by the contract exception.

Consequently, Mr. Appleton's claims for interference with contract or economic advantage, such as a loss of business reputation, are barred. Even if ATF had a duty not to interfere with Mr. Appleton's economic relationship with his buyer, any breach of that duty is not actionable under the FTCA. See Art Metal, 753 F.2d at 1153. Each count of the complaint alleges that Mr. Appleton was forced into breach of his contract and that his business reputation was thereby damaged. (See Compl. ¶ 17). Thus, this claim falls within the scope of the FTCA's contract exception. See Krc, 989 F.2d 1211 (following Art Metal and holding that a claim for damages against the United States for interference with prospective employment opportunities "would clearly be barred by sovereign immunity" under the FTCA); Shipkovitz v. Mosbacher, 1991 WL 251864 (D.D.C.1991) (dismissing claim of interference with prospective advantage in an employment discrimination suit because claim arose out of interference with contractual rights).

## 2. Government Negligence may be Actionable even though Interference with Contract Rights is not.

The fact that Mr. Appleton cannot sue for interference with contract does not mean, however, that he cannot sue for negligence. The existence of a negligence per se claim was an important consideration, for instance, in Art Metal. The Court of Appeals dismissed Art Metal's complaint only after finding that its negligence claim lacked merit. See Art Metal, 753 F.2d at 1159. The court recognized that a violation of a federal regulation would not automatically trigger liability under the FTCA. Nonetheless, the court went on to inquire whether or not the government had a "duty analogous to a local tort law duty," as well. See id. at 1158–59. The court ultimately held that, "[a]part from possible claims arising out of defamation, misrepresentation, or contract, which ... are [barred] under [the contract exception]," Art Metal's allegations did not state a cause of action under D.C. law. Id. at 1160.

■ Likewise, Mr. Appleton claims that ATF negligently approved his applications. In other words, he alleges that ATF breached its duty to use due care in determining whether or not his applications met the legal requirements for an import permit. That allegation advances a basis for liability which is distinct from ATF's duty not to interfere with Mr. Appleton's contracts.

The court recognizes that Mr. Appleton's contract and negligence claims share a common factual nexus. The court will not dismiss Mr. Appleton's negligence claim, however, without exploring whether or not ATF may have breached a duty of care separate from the duty not to interfere with contractual relations. In Dun-

can v. United States, 355 F.Supp. 1167 (D.D.C.1973), a pilot claimed that the FAA's negligent denial of his medical certificate interfered with his prospective economic advantage. See id. at 1169. This court held that Duncan's claim was barred by the contract exception. See id. at 1170. The court did not, however, dismiss Duncan's claim of negligence. See id. Therefore, the court inquires whether Mr. Appleton's negligence claim is sufficiently distinct from his contract claim so as to escape the contract exception. See Beins v. United States, 695 F.2d 591, 601 (D.C.Cir. 1982) (negligence claims which also implicate FTCA exceptions are not necessarily barred).

In his opposition to the motion to dismiss, Mr. Appleton relies on Block v. Neal, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). (See Opp. to Mot. to Dis. at 9.) In Block, the plaintiff received a loan from the Farmers Home Administration (FmHA) and hired a builder to construct a house. See id. at 291, 103 S.Ct. 1089. The contract specified that FmHA would inspect and test all work done on the house. See id. at 290–91, 103 S.Ct. 1089. An FmHA official inspected the site before, during and after construction. The official's final report stated that the construction comported with the specifications FmHA had approved. See id. at 292, 103 S.Ct. 1089. Relying on this assurance, plaintiff moved in, only to find out later that there were severe defects in the construction. See id. She then sued, claiming that FmHA was liable for not properly conducting the inspections. See id. The Government successfully moved to dismiss by asserting that the claim was essentially one of misrepresentation and was therefore barred by the FTCA. See id. The Supreme Court disagreed. The Court ruled that although a claim for misrepresentation would be barred under the FTCA, the plaintiff was asserting a different claim of negligence, which was not barred. See id. at 298, 103 S.Ct. 1089. Similarly, Mr. Appleton claims both that ATF was negligent and that its negligence caused him to breach his contract. As

discussed above, the contract exception bars Mr. Appleton's claim that ATF interfered with his contract. Under Block, however, the contract exception does not immunize the Government from liability for any underlying negligence in approving or revoking Mr. Appleton's permits. At bottom, Mr. Appleton's claim sounds in negligence; the fact that profit expected under a contract may provide the measure of damages does not convert the negligence claim into a contract claim.

Mr. Appleton also cites Sheridan v. United States, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988) in support of his position. (See Opp. to Mot. to Dis. at 10.) There, the plaintiff was injured when a drunken Navy corpsman fired on the plaintiff's car. The plaintiff sued the Navy, alleging that his injuries were caused by the negligence of other corpsmen who saw the shooter and failed to stop him from carrying a rifle in his obviously intoxicated state. See Sheridan, 487 U.S. at 395, 108 S.Ct. 2449. The Government argued that because the shooter was an employee of the government, the FTCA barred recovery. The Supreme Court held that the shooter's employment status was irrelevant. Because the alleged negligence took place at a naval hospital and the Navy has regulations prohibiting the possession of firearms, the Government assumed responsibility "to provide care to a person who was visibly drunk and visibly armed." See id. at 401, 108 S.Ct. 2449. Since the serviceman's employment was "entirely independent" of the relationship between the government and the plaintiffs, the FTCA did not apply. See id. at 403, 108 S.Ct. 2449. In the present case, however, the employment relationship and duties of the Government go to the core of Mr. Appleton's relationship with the ATF. Cf. Guccione v. United States, 878 F.2d 32 (2d Cir.1989). The personnel who reviewed and approved Mr. Appleton's applications were authorized to do so only in their capacity as ATF employees. For this reason, Sheridan is inapposite to the

case at bar and does not support Mr. Appleton's position.

For its part, the Government argues that Mr. Appleton is re-characterizing what is fundamentally a contract claim as a negligence claim in order to avoid the contract exception. (*See* Def.'s Reply for Summ.J. at 11.) When deciding the scope of the contract exception, however, the courts have drawn a definite distinction between contract claims and negligence claims. Rather than treat the contract exception as an unlimited bar to recovery, courts have entertained contract-related claims that allege negligence. Following *Art Metal* and *Duncan*, this court holds that Mr. Appleton's negligence claim is not barred by the FTCA.

### C. Defendant's Motion to Dismiss Counts 1 and 3 under the FTCA's Discretionary Function Exception

#### 1. The scope of the FTCA's "Discretionary Function" Exception

Each party frames the scope of the FTCA's discretionary function exception[2] in vastly different terms. Mr. Appleton focuses on three distinct actions by ATF. Count One alleges that ATF's decision to bar imports of ARMSCOR products serves no "conceivable foreign policy [or] national security interest...." (Comp.¶ 20.) When such an "abuse of discretion" is committed without "full, fair and adequate notice to the public," he contends, "it is negligent or reckless." (*Id.*) Count Two alleges that ATF was negligent in its approval of Mr. Appleton's permits. (*See id.* ¶ 24.) Count Three alleges that ATF's decision to revoke the permits after they were issued was negligent and arbitrary. (*See id.* ¶ 26.)

In contrast, the Government characterizes its decision to approve the permits as one "grounded in social, economic and po-

litical policy." (*See* Mot. to Dis. at 2.) The Government makes no distinction between the debarment policy as a whole and the approval and revocation of Mr. Appleton's individual permits. In so doing, the Government glosses over numerous decisions in which the courts agonized over when agency decisions cease to be "discretionary" within the meaning of § 2680(a). Therefore, it is necessary to analyze the three actions within the framework of existing case law. Both count 1 and count 3 will be dismissed because the actions they challenge—the debarment of ARMSCOR and the revocation of Mr. Appleton's permits—were discretionary decisions reflecting agency interpretations of national policy.

Count Two, however, alleges that ATF negligently approved Mr. Appleton's permit applications. Because there is a question as to whether or not ATF employees had meaningful discretion in approving the applications, count 2 will not be dismissed under the discretionary function exception at this juncture.

#### 2. The decision to debar ARMSCOR was discretionary; accordingly, Count 1 will be dismissed

██ The discretionary function exception was meant to shield the Government from suits challenging "legislative and administrative decisions grounded in social, economic, and political policy." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense ("Varig Airlines")*, 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The exception "protects only governmental actions and decisions based on considerations of public policy." *Berkovitz v. United States*, 486 U.S. 531, 537, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Congress created the exception "to protect the Government from liability that would

---

**2.** 28 U.S.C. § 2680(a) provides that the United States shall be immune from:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or

regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

seriously handicap efficient government operations." *United States v. Muniz*, 374 U.S. 150, 163, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Furthermore, "even the negligent performance of a discretionary function does not subject the government to liability under the Federal Tort Claims Act." *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1194 (D.C.Cir.1986). Absent valid constitutional concerns, this court will not substitute its judgment for that of State or ATF on a matter of policy. *See generally Cope v. Scott*, 45 F.3d 445, 448 (D.C.Cir.1995) ("[The discretionary function exception] was designed to prevent the courts from 'second guessing,' through decisions in tort actions, the way that government officials choose to balance economic, social, and political factors as they carry out their official duties."). The decision to debar the manufacturer ARMSCOR falls well within this category of "the Government acting in its role as a regulator of the conduct of private individuals." *See Varig Airlines*, 467 U.S. at 813, 104 S.Ct. 2755.

As the Government points out, ATF import regulations follow the policies of the State Department and the Department of Defense in "matters affecting world peace and the external security and foreign policy of the United States." *See* 27 C.F.R. § 47.55. In an August 1994 letter to ATF, State declared that it was banning sales of defense articles and services to ARMS-COR. (*See* Mot. to Dis., Ex. 2). The State Department also asked ATF to ban imports from ARMSCOR and its subsidiaries. (*See id.*) State requested that ATF consult it if ATF were to find that "an exception may be warranted for overriding U.S. foreign and/or national security interests." Such considerations are precisely the type of policy decisions meant to be protected by § 2680(a). Whether or not ATF was negligent by not giving notice of its policy change is not material. The discretionary function exception bars Mr. Appleton from challenging the decision to bar ARMSCOR altogether. Therefore, the court will grant the defendant's motion to dismiss count 1.

### 3. The decision to revoke the import permits was discretionary; Count 3 will be dismissed

■ Count 3, Mr. Appleton's claim that ATF should be liable for revoking his permits is barred by the FTCA. The ATF's decision to revoke Mr. Appleton's permits is protected by the FTCA's discretionary exception, 28 U.S.C. § 2680(a). By asking State for advice and subsequently being informed that there was no "overriding national security or foreign policy rationale" to make an exception in this case, ATF acted in a manner that warrants FTCA protection. (*See* Mot. to Dis., Ex. 5.)

Prior decisions persuade the court that Mr. Appleton is precluded from challenging the revocation of his permits. In *B-West Imports v. United States*, 75 F.3d 633 (Fed.Cir.1996), arms importers challenged a ban on arms imports from China and ATF's consequent revocation of import permits for weapons made in China. *See id.* at 635–36. In 1994, the President announced sanctions against China which included an import ban on munitions. In response to the policy change, ATF revoked existing import permits. The court dismissed the suit, reasoning that the power to convey permits also includes the power to revoke them. *See id.* at 636. Even though the permits at issue were valid, approved non-negligently and in accordance with prior policy, the Government could not be sued for revoking them. *See id.* Mr. Appleton presents no reason to believe that ATF did not likewise have the power to revoke his permits. *See generally Mitchell Arms. Inc. v. United States*, 7 F.3d 212 (Fed.Cir.1993) (denying importer's Takings claim because its "ability to import the rifles and sell them in the United States was at all times entirely subject to the exercise of ATF's regulatory power."); *Gun South, Inc. v. Brady*, 877 F.2d 858 (11th Cir.1989) (affirming ATF's authority to temporarily suspend permits while it reassesses its policies). For the

foregoing reasons, Mr. Appleton may not challenge the revocation of his permits.

**4. A genuine issue of fact exists as to whether ATF's approval of the applications was discretionary; Count 2 will not be dismissed.**

**a) The decision to debar ARMSCOR and the approval of Mr. Appleton's applications are distinct actions for purposes of the Discretionary Function Exception.**

■ In count 2, Mr. Appleton alleges that ATF was negligent in failing to realize that some state arsenals of South Africa were ineligible for import permits. (*See* Comp. ¶ 23.) This is quite a different allegation than that in count 1. Here, the emphasis is not on the original policy decision to bar ARMSCOR products, but the alleged negligence in handling particular permit applications. Mr. Appleton is claiming that a specific task was negligently handled—a task, he contends, that does not involve policy considerations.

As noted above, the Government fails to address the distinction between the policy decision (debarment) on the one hand and the approval of Mr. Appleton's applications on the other. The Government asserts that there is no "statutory mandate" for ATF to deny imports from certain companies; the fact is, though, that State gave ATF a list of proscribed companies related to ARMSCOR and directed ATF to cross-check import applications against this list. (*See* Mot. to Dis. at 5–6.) This fact is confirmed by ATF's own Chief of Firearms and Explosives Imports, Lawrence White. Mr. White stated, "*ATF approved [Mr. Appleton's] permits based on* information provided on the Forms 6 that the State Arsenal was the manufacturer of the ammunition and *the fact that State Arsenal was not on the list of companies affected by the State Department's ARMSCOR policy.*" (White Dec. ¶ 6) (emphasis added.) Mr. White's description of the approval process leaves little room for ATF employees to exercise discretion.

That the approval of Mr. Appleton's permits was not "discretionary" is clear under the Government's own reading of precedent. The Government quotes *Thompson v. United States*, 592 F.2d 1104, 1111 (9th Cir.1979), for the proposition that a discretionary decision requires "the balancing of several factors made without reliance upon any readily ascertainable rule or standard." (*See* Mot. to Dis. at 17.) The Government also states that a *non*-discretionary decision is one in which employees "do no more than cross-check 'facts against a clear rule or standard.'" (*See id.* at 17) (quoting *Hendry v. United States*, 418 F.2d 774, 782 (2d Cir.1969))) According to ATF's own description of the approval process, the court concludes that there is a genuine issue as to whether the approval of Mr. Appleton's permits was non-discretionary as that term is defined by *Hendry. See generally Beins v. United States*, 695 F.2d 591, 602 (D.C.Cir.1982) (matching individual facts to mandated policy or clear standards is a non-discretionary function within the meaning of § 2680(a).

While the Government seeks to conflate ATF's *import policy decisions* with the import application *process,* courts have differentiated between policy considerations and the day-to-day application of a policy. Likewise, this court will analyze the disputed application of the debarment policy and determine whether or not it was a discretionary function. Because no decision directly addresses allegedly negligent approvals of ATF import applications, it is necessary to look for guidance to decisions interpreting the discretionary function exception. A review of these cases reveals that when regulatory rules leave agency employees no real choice, the discretionary function exception does not bar an action challenging the agency's conduct.

**b) The boundaries of the Discretionary Function Exception**

The first Supreme Court decision to address the FTCA's discretionary function exception was *Dalehite v. United States,*

346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In *Dalehite,* the Court considered whether the United States could be sued for damages arising from an explosion of fertilizer. The plaintiffs charged that the Government had been negligent in many ways, from the decision to export the fertilizer to its storage and loading. Construing § 2680(a) broadly, the Court held that the discretionary function exception barred all the claims. Although the Court did not precisely delineate "where discretion ends," the Court did state that the exception shields more than "the initiation of programs and activities." *See id.* at 35, 73 S.Ct. 956. The Court went on to say, "Where there is room for policy judgement and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *Id.* at 36, 73 S.Ct. 956.

■ There is a two-step test for determining when the discretionary exception shields the Government from liability. First, a court must look at "the nature of the conduct, rather than the status of the actor." *See Varig Airlines,* 467 U.S. at 813, 104 S.Ct. 2755. Then the court must decide if the Government performed the challenged act "in its role as a regulator." *See id.* at 813–14, 104 S.Ct. 2755. This inquiry is tempered by the understanding that "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of tort." *Id.* at 814, 104 S.Ct. 2755. The Court held that the FAA's decision to certify the airplanes without first inspecting them was protected by the discretionary exception. Even if the FAA's employees were negligent in checking airplanes, their acts were protected because they "were specifically empowered to make policy judgements regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources." *Id.* at 820, 104 S.Ct. 2755. Ac-

cordingly, Varig's claims were barred by the discretionary function exception.

■ The Supreme Court elaborated on the discretionary function analysis in *Berkovitz.* There, the Court considered whether the NIH and FDA could be held liable for the approval of a batch of polio vaccine that caused a boy to contract the disease. Since the plaintiff's claim was that the agencies deviated from a regulatory directive in licensing the vaccine, the discretionary function exception did not apply. Nor did the exception apply when the FDA acted in a way that did not involve the "permissible exercise of policy discretion." *See Berkovitz,* 486 U.S. at 546, 108 S.Ct. 1954. If an agency's policy leaves no room for an official to exercise policy judgment "in performing a given act, or if the act simply does not involve the exercise of such judgement, the discretionary function exception does not bar a claim that the act was negligent or wrongful." *Id.* at 546–47, 108 S.Ct. 1954.

The discretionary function exception does not automatically protect all regulatory functions of the Government. *See id.* at 538, 108 S.Ct. 1954. The Government *can* be held responsible for "any negligent execution of admittedly discretionary policy judgements where the decisions required for the execution did not themselves involve the balancing of public policy factors." *Sami v. United States,* 617 F.2d 755, 766 (D.C.Cir.1979). Even though a decision is being made, if that decision is not grounded in public policy concerns, it is not immunized. To hold otherwise would cause § 2680 to "swallow any waiver of sovereign immunity." *Orlikow v. United States,* 682 F.Supp. 77, 82 (D.D.C.1988).

In *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court held that decisions made by bank regulators involved the exercise of discretion. A bank challenged the regulators' actions, asserting that they did nothing more than apply "technical skills and business expertise." *See id.* at 331, 111 S.Ct. 1267. Some of the

regulators' day-to-day decisions, however, involved public policy concerns "within the purview of the policies behind the [governing] statutes." *Id.* at 332–33, 111 S.Ct. 1267. Therefore, the discretionary function exception protects more than just the establishment of broad policies; it also protects day-to-day activities which involve policy-based decisions. *See id.* at 334, 111 S.Ct. 1267. "[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *Id.* at 324, 111 S.Ct. 1267.

Conversely, the discretionary function exception does not apply if an employee violates mandatory regulations. *See id;* *Red Lake Indians v. United States,* 800 F.2d 1187, 1196 (D.C.Cir.1986). Furthermore, any regulatory provision that grants an employee discretion "creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* With the guidance of these precedents, the court considers whether or not ATF's approval of Mr. Appleton's permits was "discretionary."

**c) The Record is Inadequate to Determine Whether ATF employees exercised discretion in approving Mr. Appleton's permits.**

Mr. Appleton contends that ATF employees did not exercise policy-based discretion when they approved his applications; rather, they merely checked a list to see if "State Arsenal" was a debarred company. (*See* Opp. to Mot. to Dis. at 7–8.) Indeed, nothing in the record suggests that ATF employees were acting in a fashion similar to the federal regulators in *Gaubert;* there is no evidence that the ATF employees had choice or judgment in determining whether to approve the applications. State and ATF had discretion to determine which companies to debar. Once the debarment list was issued, however, it appears that ATF employees had

no choice but to deny imports from listed contractors and grant imports from contractors *not* listed.

Following *Gaubert,* the Court of Appeals held in *Cope v. Scott,* 45 F.3d 445 (D.C.Cir. 1995), that the maintenance of roads was a discretionary function of the Park Service, but that decisions on where to place road signs were not. This is an excellent example of the distinction between policy decisions and acts undertaken by agency employees to implement the policies. "The mere presence of a choice—even if that choice involves whether money should be spent—does not trigger the exception." *Id.* at 449. Only decisions involving the exercise of policy judgement are immunized. *See id.* In *Cope,* the court asked whether there was "any federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow." *Id.* at 448. If there was a specific directive, the employee had no choice and the only issue was whether the employee followed the directive. If the employee did not follow the directive, the government would be susceptible to suit. *See id.* Like the Park Service's decision to maintain roads, ATF's decision to debar ARMSCOR is not actionable under the FTCA. The decision to approve particular permits, however, will not be protected if it did not involve any policy judgment.

In a case quite similar to the one at bar, a U.S. District Court in Michigan addressed the issue of when the grant of a permit ceases to be a discretionary function. In *Hoffman v. United States,* 398 F.Supp. 530 (E.D.Mich.1975), the FAA was alleged to have negligently issued a certificate to the owner of an aircraft which crashed. The court concluded that the plaintiffs could not challenge the regulation that set requirements for the issuance of the certificate, but that they could bring a suit alleging that the FAA ignored its own regulations. *See id.* at 535. While the court agreed that the granting of a license usually entails some degree of discretion, "this is not necessarily so in all

cases, particularly with regard to an initial determination of eligibility." *Id.* at 539. Count 2 of Mr. Appleton's complaint is similar to Hoffman's in that it attacks the "refusal to apply a regulation." *Id.*; Comp. ¶ 23. Based on the available record, it seems there was little or no discretion in the approval of Mr. Appleton's applications; the ATF employees merely checked to see if the applications satisfied the requirements of the regulation.

Nevertheless, it is possible that the ATF employees who reviewed Mr. Appleton's applications did have some degree of discretion that has not yet been documented. In *Red Lake*, for instance, the Government was held immune for failing to make contingency plans after receiving warnings about an imminent uprising on a reservation. The court held the discretionary function exception applied because the FBI and BIA "estimat[ed] the degree of confidence to be placed in a vague warning and assign[ed] personnel accordingly." *See Red Lake*, 800 F.2d at 1198. Mr. Appleton maintains that ATF should have thoroughly reviewed his application and paid careful attention to the name of the ammunition manufacturer. (*See* Comp. ¶ 23.) By contrast, the Government presents no evidence that ATF employees had discretion as to whether or not to verify manufacturer information based on available resources in relation to the furtherance of debarment policies. Nor has the Government presented evidence of any policy regarding the review of applications which list "State Arsenal" as the manufacturer.

The court cannot conclude at this time whether or not ATF's approval of the permits falls under the discretionary exception, because there are genuine issues of fact with regard to the application process. Consequently, the court will deny the motion to dismiss as to count 2. To prevail on a motion for summary judgment on the ground that the discretionary exception bars count 2, the ATF must show that its employees exercised policy-based discretion in reviewing Mr. Appleton applications. If the decision to approve the permits was discretionary, negligence would

not subject the Government to liability. *See Red Lake*, 800 F.2d at 1194; *Golden Pacific Bancorp v. Clarke*, 837 F.2d 509, 511–512 (D.C.Cir.1988) ("a claim based upon the exercise of a discretionary function is barred even if discretion is abused").

### D. Mr. Appleton's Negligence Claim.

#### 1. The duty to competently process applications is distinguishable from any supposed "duty" not to revoke permits.

Mr. Appleton does not claim that he had a right to an import permit; rather, he claims only that he had a right to competent administration of the application review process. Were that process conducted competently, he alleges, the ATF would have denied his applications; Mr. Appleton, in turn, would not have relied on ATF's approval in conducting his business. (*See* Opp. to Mot. to Dis. at 5.)

It is without question that no arms dealer has an absolute right to an import permit; ATF has a right to both deny and revoke permits. *See B–West Imports*, 75 F.3d at 636; *Mitchell Arms*, 7 F.3d at 216–217 (arms importer did not acquire a property interest when it agreed to purchase firearms with the expectation of importing them under previously issued permits because the importer "was subject to governmental regulation of firearms"); *Gun South*, 877 F.2d at 865. ATF regulations make clear that all permits are conditional. *See* 27 C.F.R. § 47.44(a); *B–West*, 75 F.3d at 637.

Instead, Mr. Appleton is asking the court to find that ATF: (1) had a duty to administer the application review process in a competent manner and (2) breached that duty. (*See* Comp. ¶¶ 23, 24; Pl.'s Mot. for Summ.J. at 18.)

#### 2. Government functions which have no private-sector equivalent.

The FTCA generally allows the government to be held liable "in the same

manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674.[3] For the reasons which follow, the court concludes that a private individual would have a duty to use due care if it undertook to review and decide on import permit applications. Under the provision of the FTCA just cited, it follows that the ATF had a duty to use due care and may be held liable if it is shown to have breached that duty.

The Government points out that no private individual has a task analogous to ATF's review of import applications. From this the Government urges the court to conclude that ATF cannot be sued for the manner in which it reviewed the applications. (*See* Mot. to Dis. at 19–20.) This argument founders against clear authority to the contrary. As will be discussed below, the Supreme Court and the courts of this Circuit hold that the government may be held to a duty of care even when it performs a function which the private sector does not perform. Accordingly, this court considers whether or not a non-governmental entity performing the same function would have a duty to use due care.

In *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the Supreme Court liberally interpreted the FTCA's private-person analogy requirement. The Government was found liable for the Coast Guard's negligent failure to maintain a lighthouse. The Court reasoned that if one undertakes to warn the public, there is a duty to perform that function "in a careful manner." *See id.* at 64–65, 76 S.Ct. 122; *see also United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) (FTCA does not bar suits for negligence of federal prison employees); *Rayonier, Inc. v. United States*,

352 U.S. 315, 319–320, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) (Congress intended to spread the cost of government negligence among the taxpayers because they benefit from government services); *Black v. Sheraton Corp.*, 564 F.2d 531 (D.C.Cir.1977) (plaintiff targeted by FBI eavesdropping operation could sue the government).

In *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), the Court held the FmHA could be liable if it voluntarily undertook to supervise construction of a house and failed to use due care in doing so. *See id.* at 297, 103 S.Ct. 1089. The Court held that § 2674 "authorizes suit against the Government for the negligence of a federal agency in performing a voluntary undertaking."[4] *See id.* at 293, 103 S.Ct. 1089. Therefore, ATF's voluntarily undertaking to review import applications brought with it a duty to conduct that process competently.

In *Wells v. United States*, 851 F.2d 1471 (D.C.Cir.1988), the Court of Appeals considered whether or not the EPA's negligence in failing to respond to alleged lead pollution would lead to liability. The court rejected the Government's assertion that the FTCA does not apply when the exercise of a "core" government function is challenged. *See id.* at 1473. "[C]ourts have imposed liability on the United States in many situations in which the government was engaged in activities that have no analogy in the private sector." *Id.* at 1474. Accordingly, even if reviewing import permits is a "core government function," that does not prevent a suit under § 2674's private-person requirement.

The Government also argues that because ATF was not required to take action in processing Mr. Appleton's applications,

---

3. This will be referred to as "the private person requirement."

4. "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if his failure to exercise such care increases the risk of such harm, or the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323. *See, e.g., Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095 (D.C.1994).

ATF owed him no actionable duty. (*See* Reply for Mot. to Dis. at 8.) While it may be true that the AECA provides discretion as to how to implement the regulations, it is still illegal to import arms without a permit from ATF.[5] If ATF were not required to use due care or even perform the review process, applicants would be forced to choose between forgoing their livelihood or consummating transactions at the risk of criminal sanctions. The law is clear: an import permit is necessary and the only agency issuing them is ATF—the penalties are quite harsh for any violations of the law.[6] Under these circumstances, it would be inequitable to hold that ATF owed Mr. Appleton no duty to review his applications with *some* measure of care.

Finally, the Government attempts to show why Mr. Appleton's negligence claim must fail by citing cases in which private parties sued the District of Columbia. (*See* Mot. to Dis. at 21–22.) These cases are inapposite, because the FTCA asks whether the Government would be liable if it were a *private individual.* The FTCA does *not* ask whether the Government would be liable if it were a state or local government. This dispute is not governed by local laws regarding the sovereign immunity of the local government. Therefore, the Government's protestations regarding a lack of a "special relationship"[7] between the government and Mr. Appleton under D.C. sovereign immunity laws is inapposite. In short, the government's resort to D.C. sovereign immunity case law does not alter the court's conclusion that Mr. Appleton has satisfied the FTCA's private-person requirement.

**5.** 22 U.S.C. § 2778(b)(2) provides, in pertinent part, "Except as otherwise specifically provided in regulations issued under subsection (a)(1) of this section, no defense articles or defense services ... may be exported or imported without a license for such export or import...."

**6.** "Any person who willfully violates any provision of this section ... shall upon convic-

### 3. The Negligence Law of the District of Columbia

#### a) ATF's Alleged Negligence

#### i. Elements of Negligence under D.C.Law

 Whether a claim can be made against the Government under the FTCA depends upon whether a private entity under like circumstances would be liable "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). To recover for negligence under D.C. law, a plaintiff must prove that (1) the defendant breached a duty of care owed to the plaintiff; (2) the breach was the proximate cause of the plaintiff's injuries; and (3) the plaintiff sustained damages as a result. *See Williams v. Baker,* 572 A.2d 1062, 1064 (D.C.1990); *Beckford v. United States,* 950 F.Supp. 4, 7 (D.D.C. 1997). The plaintiff bears the burden of proving each of these three elements by a preponderance of the evidence. *See Beard v. Goodyear,* 587 A.2d 195, 201 (D.C.1991). If the plaintiff fails to present sufficient evidence to establish the applicable standard of care, the court must enter judgment for the defendant. *See id.* at 200. Allegations alone do not present a genuine issue of material fact. *See id.* at 198–99, 202.

#### ii. What Constitutes Negligence in Analogous Circumstances

In the analogous case of *Beard v. Goodyear Tire & Rubber Co.,* retailers sued to recover funds charged to credit cards in Beard's name. *See Beard v. Goodyear,* 587 A.2d 195, 196 (D.C.1991). Beard countered that his ex-girlfriend fraudulently

tion be fined for each violation not more than $1,000,000 or imprisoned not more than ten years, or both." 22 U.S.C. § 2778(c).

**7.** A "special relationship" has been defined as "1) a direct contact or continuing contact between the victim and the governmental agency or official; and 2) a justifiable reliance on the part of the victim." *Platt v. D.C.,* 467 A.2d 149, 151 (D.C.1983).

obtained the cards without his knowledge. Beard claimed that had the companies exercised due care, they would not have issued the cards and would have avoided the injury to Beard's credit rating which followed their unauthorized use. Specifically, Beard alleged the companies were negligent because they failed to follow their own procedures for verifying information on applications. *See id.* at 197. The D.C. Superior Court granted summary judgment for the retailers. The Court of Appeals affirmed, reasoning that Beard failed to show that the approval of the applications was negligent, because there was no testimony as to the standard of care in that industry. Furthermore, Beard failed to show that the retailers did not adhere to their standards in approving the application. It was not obvious

> that a merchant must have been negligent if he approved a fraudulent credit card application.... Beard suggests that if the merchants believe that it would be prohibitively expensive to institute more probing processing requirements in light of the small number of fraudulent credit applications received, then they should nevertheless be liable to those few individuals who may be injured because less searching procedures did not detect the fraud.

*Id.* at 201. The court held that such a rule would lead to strict liability, which in the District of Columbia applies only to dangerous activities. *See id.*

Mr. Appleton claims that a further investigation of the term "State Arsenal" on his application would have led to a denial of the application. Therefore, more evidence is needed to show (1) whether ATF was negligent in failing to investigate "state arsenal" and (2) whether such further inquiry would have led ATF to deny the applications.

### b) Mr. Appleton's Alleged Contributory Negligence

 The Government contends that Mr. Appleton was contributorily negligent by putting down merely "State Arsenal" as the manufacturer of the ammunition. (*See*

Mot. to Dis. at 23.) The District of Columbia, however, has not adopted the doctrine of comparative negligence. *See D.C v. Washington Hosp. Center,* 722 A.2d 332, 339 (D.C.1998). Under D.C. law, "[a] plaintiff is barred from recovery if his negligence was a substantial factor in causing his injury, even if the defendant was also negligent, as long as the plaintiff's negligence contributed in 'some degree' to his injury." *Sinai v. Polinger Co.,* 498 A.2d 520, 528 (D.C.1985). "The defendant may not be held liable, and conversely the plaintiff may not be barred from recovery, unless their respective negligence was a 'substantial factor' in causing the injury." *Id.* at 527. The parties have not yet submitted enough evidence for the court to determine whether or not Mr. Appleton was contributorily negligent. The court will make that determination on renewed motions for summary judgment or at trial.

### 4. Scope of review of ATF's application review process

 To conclude that ATF did not act negligently in approving Mr. Appleton's permits, this court needs some logical reason why the applications were approved. The Government's conclusory assertion that the permits were approved because Mr. Appleton put down "State Arsenal" as the manufacturer does not sufficiently illuminate the issue. *See Gilbert Equipment v. Higgins,* 709 F.Supp. 1071 (S.D.Ala. 1989), *aff'd,* 894 F.2d 412 (11th Cir.1990) (judge reviewing ATF's denial of an import permit could rely on additions to the administrative record where the record did not give enough details about ATF's decision). "If the agency fails to explain its actions so that effective judicial review is frustrated, the reviewing court must either (1) obtain from the agency, through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary, or (2) remand to the agency for further amplification." *Id.* at 1075. ATF gave an explanation in the form of two declarations that went beyond the "bare record." *See id.* at 1076. The

parties here have provided the court with numerous documents, but none sets forth the specifics of the application review process. Accordingly, the ATF may submit an explanation of the permit review process so that the court may determine if the agency acted negligently in approving Mr. Appleton's applications. *See id.; see also Citizens v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Nonetheless, it is clear that courts must be deferential to agency decisions. The court will not substitute its own judgment for that of the agency; instead, the court will determine only whether or not the agency's decision was arbitrary and capricious. *See Gilbert,* 709 F.Supp. at 1078. The court will sustain the agency's decision so long as it was based on relevant factors and was not a clear error of judgment. *See* 5 U.S.C. § 706(2)(a)[8]; *Northern Mun. Dist. Group v. F.E.R.C.,* 165 F.3d 935, 941 (D.C.Cir.1999).

The government submitted a declaration from Lawrence White, Chief of ATF's Firearms and Explosives Imports Branch. The declaration, however, provides no information regarding the review and approval of Mr. Appleton's applications beyond that provided in the pleadings. (*See* White Dec. at 3–4.) On the other hand, Mr. Appleton provides documentation showing that ATF approved other import applications which listed Pretoria Metal Pressings ("PMP") as the manufacturer of the ammunition sought to be imported. (*See* Pl.'s Mot. for Summ.J., Exs. 13–14.) According to the ATF policy enacted in fall 1994, PMP was a debarred company. (*See* Pl.'s Mot. for Summ.J., Ex. B.) While this does not *prove* that ATF negligently approved Mr. Appleton's applications, it does raise a general concern about the level of care ATF used in reviewing his applications. A real question remains as to how ATF processes applications that list "State Arsenal" as the manufacturer. Does ATF have special procedures for South African or "State Arsenal" imports? If so, did ATF follow those procedures?

In short, the court requires further information before it can decide whether, as a matter of law, ATF or Mr. Appleton were negligent.

## V. CONCLUSION

For the foregoing reasons, this court finds that the contract interference exception. 28 U.S.C. § 2680(h), bars any claim that ATF interfered with Mr. Appleton's contractual relations with a third party. Accordingly, the court will grant the defendant's motion to dismiss counts 1 and 3 and deny the plaintiff's motion for summary judgment on those counts. The court finds that a genuine issue remains as to whether or not ATF exercised policy-based discretion in approving Mr. Appleton's applications and whether or not ATF acted negligently in approving those applications. Accordingly, the court will deny without prejudice the defendant's motion to dismiss as to count 2 and the plaintiff's motion for summary judgment as to count 2.

An appropriate order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed this 31 day of August, 1999.

### *ORDER*

Denying Plaintiff's Motion for Summary Judgment on Counts 1 and 3; Granting Defendant's Motion for Summary Judgment on Counts 1 and 3

Denying Without Prejudice the Cross–Motion for Summary Judgment on Count 2;

Scheduling Discovery and Motions for Summary Judgment on Count 2; Scheduling Final Status Hearing

For the reasons set forth in this court's Memorandum Opinion separately and con-

---

**8.** "The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(a).

temporaneously executed and issued this 31st day of August, 1999, it is

**ORDERED** that the plaintiff's motion for summary judgment shall be and hereby is **DENIED** as to count one and count three of the complaint; and it is

**FURTHER ORDERED** that the defendant's motion for summary judgment shall be and hereby is **GRANTED** as to count one and count three of the complaint; and it is

**FURTHER ORDERED** that the defendant's motion for summary judgment shall be and hereby is **DENIED WITHOUT PREJUDICE** as to count two of the complaint; and it is

**FURTHER ORDERED** that the plaintiff's motion for summary judgment shall be and hereby is **DENIED WITHOUT PREJUDICE** as to count two of the complaint; and it is

**FURTHER ORDERED** that count one and count three of the complaint shall be and hereby are **DISMISSED;** and it is

**FURTHER ORDERED** that the plaintiff shall be entitled to conduct discovery with respect to the policies, practices and procedures employed or referred to by Bureau of Alcohol Tobacco and Firearms employees in reviewing and deciding whether to approve firearms/ammunition import permits, said discovery to be completed by **October 30, 1999;**

**FURTHER ORDERED** that any motions for summary judgment as to count two of the complaint shall be filed by **Monday, December 27, 1999,** with oppositions due by **Thursday, January 27, 2000** and replies, if any, due by **Thursday, February 10, 2000;** and it is

**FURTHER ORDERED** that the final status conference in this matter shall be and hereby is set for 10:00 a.m. on **Tuesday, March 23, 2000.**

**SO ORDERED.**